526 So.2d 223 (1988)
Philip KIRK, Jr. and his attorney, C. Frank Holthaus
v.
STATE of Louisiana.
No. 87-CA-2586.
Supreme Court of Louisiana.
May 26, 1988.
*224 William J. Guste, Jr., Atty. Gen., Rene Salomon, Asst. Atty. Gen., for appellant.
C. Frank Holthaus, Baton Rouge, for appellee.
Thomas L. Lorenzi, Godwin, Roddy, Lorenzi, Watson & Sanchez, Lake Charles, Rebecca L. Hudsmith, Shreveport, Keith B. Nordyke, Nordyke & Denlinger, Baton Rouge, John Wilson Reed, New Orleans, amicus curiae for plaintiffs-appellees.
LEMMON, Justice.
The State of Louisiana has invoked this court's appellate jurisdiction to seek review of a judgment of the trial court which declared La.R.S. 14:322.1 to be unconstitutional. La. Const. art. V, § 5(D).
This action began with a petition for a declaratory judgment and injunctive relief filed by Philip Kirk, Jr., who had been indicted in federal court on five counts of mail fraud, and by C. Frank Holthaus, Kirk's attorney in the criminal proceeding. In connection with the federal court litigation, plaintiffs wished to record interviews with potential witnesses, but were prevented by La.R.S. 14:322.1 (Acts 1986, Nos. 96 and 97) from doing so without the consent of all parties to the confidential communications. Plaintiffs sought to enjoin law enforcement authorities from using the statute to seek criminal sanctions against them for recording confidential communications during their investigation in the criminal case. To establish the need to record the conversations, plaintiffs alleged that the witnesses (all of whom were adverse to defendant) would not speak freely if they were aware of the recording. Plaintiffs challenged the statute on equal protection grounds, noting that the prosecutor already had in his possession recorded confidential communications between defendant and these witnesses taken without defendant's consent.
The trial judge denied a temporary restraining order, but promptly conducted a hearing on the merits of the declaratory judgment action, ultimately ruling that La. R.S. 14:322.1 is unconstitutional. Hence this appeal.
La.R.S. 14:322.1 makes unlawful and punishes as a misdemeanor the intentional eavesdropping upon or recording of a confidential communication without the consent of all parties, but the criminal statute is expressly inapplicable to law enforcement agencies and their authorized agents.[1] *225 At the hearing plaintiffs presented an experienced criminal investigator who testified that even cooperative witnesses, upon being told that an interview is being recorded, become hesitant to make statements, and that adverse witnesses invariably refuse to do so. On the basis of this evidence Kirk presented the following argument in favor of his right to make the recordings: the charges in federal court were based on an alleged scheme between him and employees of Photon, Inc. to defraud the corporation; the Photon employees had actually devised the scheme and were the only witnesses to the alleged scheme; the Photon employees had recorded conversations with him at the behest of government investigators; and recording of conversations by him or his investigator with the same Photon employees was critical to his entrapment defense. Kirk contended that it was fundamentally unfair to allow the prosecutor to tape conversations and to prohibit him from doing so when the true content of those conversations would be a crucial credibility issue at trial.
In reasons for judgment, the trial judge suggested that the Legislature may validly prohibit the recording of confidential communications without the consent of all parties, but concluded that this statute, by banning only those recordings done by private citizens while permitting those done by law enforcement agents, created an arbitrary and unreasonable classification prohibited by the equal protection clauses of *226 both the federal and state constitutions.[2]
In State v. Reeves, 427 So.2d 403 (La.1982), this court held on rehearing that the government's recording of the defendant's confidential conversation with an informer, taken with only the consent of the informer, was not an unreasonable invasion of privacy and did not violate the defendant's rights under the federal and state constitutions. The majority was persuaded to a great extent by the prosecutor's argument that since the informer's testimony regarding the content of the conversation would unquestionally have been admissible at trial, the informer's electronic recording of that conversation (which completely and infallibly preserved the conversation so as to eliminate any credibility dispute) should likewise be admissible. The court emphasized:
"Society seeks to foster truth, not to suppress it. The presence of the electronic transmitter has but one effect. Instead of the informant committing the conversation to memory, a machine tapes each and every sentence of the communication. The machine notes the inflection of the voices and the context in which remarks are made. If the defendant speaks innocently, his own words will exculpate him. However, if he implicates himself, the recordings prevent him from denying his participation in the conversation. Surely, society would not consider reasonable an expectation of privacy which would result in a more inaccurate version of the events in question."
Id. at 418.
The Legislature, in enacting La.R.S. 14:322.1, preserved the prosecutor's right to obtain and use the "dynamite" evidence of a recorded conversation which the speaker is virtually powerless to deny, but prohibited the accused from obtaining and using a recorded conversation with a witness for the prosecution. Of course, the accused can still present testimonial evidence of the content of such a conversation, but the impact and quality of such testimony pales in comparison to a verbatim recording of the same conversation.[3] Moreover, testimonial evidence is subject to every aspect of human frailty, such as bias, failure of recall and the like.
La.R.S. 14:322.1 therefore establishes a classification which discriminates against the accused in a criminal case with regard to the obtaining and use of the best evidence of a conversation. In this respect the statute clearly disserves the quest for truth. However, this is not the test for denial of equal protection. The appropriate inquiry is whether there is an appropriate governmental interest suitably furthered by the classification created by the governmental *227 action in question. Sibley v. Board of Supervisors of Louisiana State University, 477 So.2d 1094 (La.1985).
There is no apparent governmental interest which is furthered by the classification which permits prosecutors to obtain and use this type of superior evidence that criminal defendants are prohibited from obtaining. Nor has the Attorney General in this case pointed out any such government interest. Indeed, this situation is similar to the one in Wardius v. Oregon, 412 U.S. 470, 93 S.Ct. 2208, 37 L.Ed.2d 82 (1973), a case challenging a state law which required criminal defendants to disclose alibi witnesses to the prosecutor without imposing reciprocal obligations upon the prosecutor, in which the Court pointed out:
"[I]n the absence of a strong showing of state interests to the contrary, discovery must be a two-way street. The State may not insist that trials be run as a `search for truth' so far as defense witnesses are concerned, while maintaining `poker game' secrecy for its own witnesses. It is fundamentally unfair to require a defendant to divulge the details of his own case while at the same time subjecting him to the hazard of surprise concerning refutation of the very pieces of evidence which he disclosed to the State. Nor does the State suggest any significant governmental interests which might support the lack of reciprocity."
Id. at 475-76, 93 S.Ct. 2212-13.
It is as fundamentally unfair to prohibit a criminal defendant from obtaining evidence by electronic recording of conversations when the prosecutor is free to obtain such evidence by the same method, at least in the absence of any reasonable basis for the distinction. Inasmuch as La.R.S. 14:322.1 violates a criminal defendant's constitutional right to equal protection of the law under both the federal and state constitutions, the statute cannot stand.
Accordingly, the judgment of the trial court declaring the unconstitutionality of La.R.S. 14:322.1 is affirmed.
WATSON, J., concurs in the result but observes that the case was moot when decided by the trial court, Kirk having been found not guilty prior to judgment being signed.
DENNIS, J., concurs in the result with reasons.
DENNIS, Justice, concurring.
I respectfully concur in the result for different reasons. A person's "communications" are specifically protected by the state constitution against unreasonable searches, seizures or "invasions of privacy." La. Const.1974, Art. 1, § 5. Conseuqently, the framers and voters who wrote and adopted that charter intended that interceptions of private conversations should not be conducted without a warrant issued upon probable cause, particularly describing the communication to be invaded and the lawful purpose or reason for the interception. Id. Therefore, the statute before us in this case is patently unconstitutional because it attempts to authorize state law enforcement officials to freely engage in invasions of private communications without a warrant or probable cause. See State v. Reeves, 427 So.2d 403, 421-428 (La.1982), (dissenting opinion). Because I would strike the statute on these grounds alone I would not reach the equal protection analysis used by the majority.
Furthermore, this case forcefully demonstrates that the fears of the dissenters in State v. Reeves, supra, are coming true. We now have taken several benighted steps down the totalitarian road. Because of this court's misinterpretation of the right to privacy article in Reeves, we allow state officials to electronically eavesdrop at will, without probable cause, and without warrants, on our citizen's private communications. At the same time, as the present case demonstrates, we have created a situation in which it is now impossible for the legislature to enact laws protecting citizens from unlimited electronic surveillance by other private citizens. Sadly and ironically, this Orwellian scenario is happening in a state whose constitution is one of the few which specifically purports to protect "communications" *228 from unreasonable searches, seizures, or invasions of privacy.
NOTES
[1] La.R.S. 14:322.1 provides as follows:

"A. It shall be unlawful for any person, intentionally and without the consent of all parties to a confidential communication, to eavesdrop upon or record such confidential communication by means of any electronic amplifying or recording device, whether such communication is carried on among such parties in the presence of one another or by means of a telegraph, telephone, or other device.
"B. For the purposes of this Section the following definitions shall apply:
"(1) `Person' means any individual, business association, partnership, corporation, or other legal entity, including any individual acting or purporting to act for or on behalf of any government or subdivision thereof, whether federal, state, or local, but shall not mean an individual known by all parties to a confidential communication to be recording such communication.
"(2) `Confidential communication' means any communication carried on in such circumstances as may reasonably indicate that any party to such communication desires it to be confined to such parties, but excludes a communication made in a public gathering or in any legislative, judicial, executive, or administrative proceeding open to the public, or in any other public circumstance in which the parties to the communication may reasonably expect that the communication may be recorded.
"(3) `Eavesdropping' means the intentional listening to or recording of a confidential communication, either by human ear or with the aid of any electronic listening device, without a valid search warrant, by a person without the consent of all the persons to the communication.
"C. Except as proof in any prosecution for violation of this Section, no evidence obtained as a result of eavesdropping upon or recording a confidential communication in violation of this Section shall be admissible in any judicial, administrative, legislative, or other proceeding.
"D. This Section shall not apply to the following:
"(1) To any public utility or public utility holding company or any subsidiary thereof engaged in the business of providing gas, electric, or communications services and facilities, or the officers, employees, or agents thereof, when the acts otherwise prohibited herein are for the purpose of construction, maintenance, conduct, or operation of the services and facilities of such public utility.
"(2) To the use of any instrument, equipment, facility, or service furnished and used pursuant to the tariffs of such a public utility company.
"(3) A law enforcement agency or any of its authorized agents.
"(4) To any corporation or other business entity engaged in the provision of products or services to the public, or the officers, employees, or agents thereof, when the acts otherwise prohibited herein are for the purpose of service quality control or for educational, training, or research purposes and such acts are performed with the consent of one party to the communication being intercepted.
"E. (1) Whoever commits the crime of criminal eavesdropping on or recording of confidential communications shall be fined not more than five hundred dollars or imprisoned for not more than six months, or both.
"(2) The provisions of R.S. 14:322.1(E)(1) shall not apply to any person transmitting a conversation to protect human life or to any person recording a conversation in which he is the victim of a verbal conversation which is obscene, harassing, or threatening." (emphasis added)
[2] The trial judge issued his ruling in this case on the first day of the federal criminal trial. Because that trial resulted in an acquittal, a member of this court raised the question in oral argument whether the appeal in this case is moot.

The issue in this case is one that may elude appellate review if mootness is declared because the criminal trial took place before the review process brought the matter to the state's highest court. While a case normally must remain justiciable throughout the appellate process, some cases are not mooted by subsequent events if the issue is "capable of repetition, yet evading review". Southern Pacific Terminal Co. v. ICC, 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911); Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2757 (2d ed. 1983). The legal issue in this case is the type which may be raised again and again by attorneys and their clients, but may never reach this court before the trial of the matter for which the taped communication is sought. Furthermore, the lawyer, who personally or through an investigator interviews the witnesses, is the one against whom this criminal statute operates. Since he will be faced with the identical problem in representing other clients, he should not be required to violate the law and undergo a criminal prosecution as his sole means of seeking relief. Doe v. Bolton, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973); see also In re P.V.M., 424 So.2d 1015 (La.1982). We therefore decline to dismiss the appeal as moot.
[3] This court recognized the significance of such evidence in State v. Trahan, 475 So.2d 1060 (La.1985). In reversing the conviction because the trial judge excluded from the jury a taped conversation between the victim's husband and the defendant's father, allegedly concerning the victim's husband's attempted extortion, the court stated:

"The tape stands in this case as objective evidence of a conversation, of an effort toward a transaction relevant to the credibility ... of important witnesses in this case."